UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBIN EUTSEY, as the Personal Representative of the Estate of Patrick Whetstone, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:11 CV 327 |
| CORIZON, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

# OPINION and ORDER

This matter is before the court on the motions of defendant Kathryn Ehlert to set aside a clerk's entry of default (DE # 65) and to dismiss the claims against her for lack of jurisdiction (DE # 69).

## I.  BACKGROUND

Plaintiff Robin Eutsey filed the present lawsuit on behalf of her deceased son, Patrick Whetstone, claiming that Whetstone was murdered by his cell-mate, Luis Silveria, while incarcerated at the Wabash Valley Correctional Center. (DE # 1 at 2.) Plaintiff alleges that defendant Kathryn Ehlert was a physician employed by defendant Corizon, Inc., a corporation under contract with the State of Indiana to provide medical and mental health treatment to inmates in the state's prison system. (*Id.*) Though plaintiff does not allege what specific actions Dr. Ehlert took with respect to Whetstone's death, the complaint generally avers that Corizon's mental health staff: was negligent in addressing Silveria's mental illnesses, which caused Silveria to kill

Whetstone (Count I); and violated a constitutional duty to protect Whetstone from violence at the hands of Silveria and was deliberately indifferent to Whetstone's safety (Count II).

## II. MOTION TO SET ASIDE ENTRY OF DEFAULT

The docket reveals that Dr. Ehlert's answer was due by May 5, 2012 (DE # 58), but she did not file by that date. Plaintiff moved for and received a clerk's entry of default against Dr. Ehlert on May 9, 2012. (DE # 61.) That same day, Dr. Ehlert filed her answer. (DE # 62.) On May 10, 2012, Dr. Ehlert moved to have the entry of default set aside. (DE # 21.)

A party seeking to vacate an entry of default pursuant to FEDERAL RULE OF CIVIL PROCEDURE 55(c) prior to the entry of final judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 630 (7th Cir. 2009). The Seventh Circuit Court of Appeals has employed a "lenient standard" in the application of RULE 55(c) and has articulated a policy of favoring trial on the merits over default judgment. *Id.* at 631; *see also C.K.S. Eng'rs Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases).[1]

---

[1] The three-element test for determining whether a court should grant a motion to set aside a *clerk's entry* of default under RULE 55(c) is the same as the test for determining whether a court should grant a motion to set aside a default *judgment* under RULE 60(b), except that the court's review of the latter type of motion is more limited and stringent. *Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir. 1994). The court has cited to jurisprudence related to both rules in this order but has employed a lenient approach given that the present motion is made under RULE 55(c).

In this case, plaintiff does not contest Dr. Ehlert's assertion that her attempts to determine whether she was a "qualified health care provider" in the State of Indiana, which she believed determined whether she could be sued in this lawsuit, constituted "good cause" for her delay. The parties also do not dispute that Dr. Ehlert's four-day delay was a relatively short one, and that she took "quick action" to correct the problem. Accordingly, the only disputed element of the *Cracco* test is whether Dr. Ehlert has articulated a meritorious defense to plaintiff's claims.

A defendant's "actual likelihood of prevailing on his defenses is not the measure of whether he has a meritorious defense . . . . A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Bieganek v. Taylor,* 801 F.2d 879, 882 (7th Cir. 1986). In this case, plaintiff focuses on Dr. Ehlert's assertion that this court lacks jurisdiction over plaintiff's negligence claim. However, the court need not delve into that topic at this stage. It is sufficient that Dr. Ehlert has averred that she plans to prove that she met the applicable standards of care and did not cause or contribute to plaintiff's alleged injuries and damages. (DE # 66 at 7.) If Dr. Ehlert successfully convinces a jury of these facts at trial, she will ultimately succeed on both the negligence claim as well as the constitutional claim. Thus, Dr. Ehlert's articulation of her defense is sufficient for purposes of satisfying the third and final element of the RULE 55-derived test for setting aside an entry of default. *See Bieganek,* 801 F.2d at 882. Accordingly, the motion to set aside default is granted. (DE # 63.)

**III.  MOTION TO DISMISS FOR LACK OF JURISDICTION**

Dr. Ehlert asserts that this court lacks subject-matter jurisdiction because plaintiff's state law claim constitutes medical malpractice, meaning that under the Indiana Medical Malpractice Act (the "Act") plaintiff was required to submit a proposed complaint to a state medical review board and obtain an opinion from a medical review panel prior to filing suit. Plaintiff argues that its claim is one of simple negligence, not medical malpractice.

The Act provides: "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . ; and (2) an opinion is given by the panel." IND. CODE § 34–18–8–4. It is undisputed that Dr. Ehlert was a qualified health care provider under the Act at the time relevant to this action. Further, it is undisputed that at the time this action was commenced, a medical review panel had not yet been formed to review plaintiff's claim, and no panel opinion had been rendered. Thus, if the plaintiff's state law claim falls within the purview of the Act, this court currently lacks jurisdiction to hear it, and it must be dismissed.

The Act defines malpractice as follows:

> "Malpractice" means a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient.

IND. CODE § 34–18–2–18. Thus, medical malpractice is the breach of the duty owed by a healthcare provider to its patient. *Madison Ctr., Inc., v. R.R.K., et al.,* 853 N.E.2d 1286,

4

1288 (Ind. Ct. App. 2007). The duty arises from the contractual relationship entered into between the provider and the patient. *Id.* The Indiana Supreme Court has defined the duty as an implied contract that the provider possesses the ordinary knowledge and skill of its profession and will utilize such attributes in a reasonable, diligent, and careful manner in undertaking the care and treatment of its patient. *Webb v. Jarvis,* 575 N.E.2d 992, 996 (Ind. 1991).

The fact that the alleged misconduct occurs in a facility that provides healthcare does not, by itself, make the claim one for malpractice. *Doe ex rel. Roe v. Madison Ctr. Hosp.,* 652 N.E.2d 101, 104 (Ind. Ct. App. 1995). Nor does the fact that the injured party was a patient at the facility or of the provider, create such a claim. *Collins v. Thakkar,* 552 N.E.2d 507, 511 (Ind. Ct. App. 1990). Instead, the test is whether the claim is based on the provider's behavior or practices while "acting in his professional capacity as a provider of medical services." *Id.* at 510.

In *Madison Center,* the Court of Appeals of Indiana examined a case similar to the case at hand. In that case, an in-patient at a psychiatric hospital sued the hospital for injuries inflicted by another patient. The hospital argued that the plaintiff's claim sounded in medical malpractice, and therefore the plaintiff was required to first submit the claim to a state medical review board. In analyzing the claim, the *Madison Center* court considered *Webb,* in which the Indiana Supreme Court held that a plaintiff's claim against a doctor who had prescribed medication to the plaintiff's assailant sounded in negligence. 575 N.E.2d at 995.

Relying on *Webb* and other Indiana appellate court precedent, the *Madison Center* court held that the hospital's failure to properly medicate, restrain, or confine the offending resident may have constituted malpractice as to that resident, but not to third parties with whom the resident may have come into contact, such as the plaintiff. *Id.* at 1289. The court reasoned that the plaintiff's injuries "did not arise from [the plaintiff's] medical treatment, but from his presence on the premises." *Id.*

Similarly, in *Midtown Community Mental Health Center v. Estate of Gahl,* 540 N.E.2d 1259 (Ind. Ct. App. 1989), the Court of Appeals of Indiana held that a claim brought by the estate of a probation officer killed by a patient of the mental health facility was not subject to the Act's requirements. The *Midtown* court stated that, "a breach of [a] duty could constitute malpractice as to [the assailant], but not as to third parties with whom [the assailant] might come into contact." *Id.* at 1262. The court further reasoned that "[t]he purpose of the Act is unrelated to the sort of liability a health care provider risks when a patient commits a criminal act against a third party." *Id.*

The court finds the reasoning of the Court of Appeals of Indiana in *Madison Center* and *Midtown* persuasive. Dr. Ehlert's alleged failure to properly medicate, restrain, or confine Silveria may have constituted malpractice as to Silveria, but not to third parties such as Whetstone. Any duty Dr. Ehlert owed to Whetstone to prevent his being subject to attack by one of the other inmates did not arise from Whetstone's medical treatment, but from Whetstone's presence on the premises. Accordingly,

plaintiff's state law claim is not subject to the provisions of the Act, this court does not lack jurisdiction to hear the claim, and Dr. Ehlert's motion to dismiss is denied.

Dr. Ehlert points out that the Court of Appeals of Indiana once reached a different conclusion on whether claims alleging third-party injuries should be classified as malpractice claims under the Act in *Ogle v. St. John's Hickey Memorial Hospital,* 473 N.E.2d 1055 (Ind. Ct. App. 1985). However, *Ogle* predated the Indiana Supreme Court's decision in *Webb,* and a more recent Indiana Court of Appeals case on the subject, *Madison Center*, chose to be guided by the Indiana Supreme Court's decision in *Webb* rather than *Ogle,* an isolated decision of a lower Indiana court. This court similarly declines to follow *Ogle*.

IV. **CONCLUSION**

For the foregoing reasons, Dr. Ehlert's motion to set aside an entry of default is **GRANTED** (DE # 65), meaning that plaintiff's motion for default judgment must be **DENIED** (DE # 63). However, Dr. Ehlert's motion to dismiss for lack of jurisdiction is **DENIED** (DE # 69).

**SO ORDERED.**

Date: February 11, 2013

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT